## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SCOTT KIMBALL , ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED,<br><br>PLAINTIFF,<br><br>VS.<br><br>MBNA CORP., BRUCE L. HAMMONDS, KENNETH A. VECCHIONE, RICHARD K. STRUSTHER, CHARLES C. KRULAK, JOHN R. COCHRAN, III, MICHAEL G. RHODES, LANCE L. WEAVER AND JOHN W. SCHEFLEN,<br><br>DEFENDANTS. | Case No. 1:05-cv-04725-KMK |
| VIRGINIA MCMATH, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED,<br><br>PLAINTIFF,<br><br>VS.<br><br>MBNA CORP., BRUCE L. HAMMONDS, KENNETH A. VECCHIONE, RICHARD K. STRUSTHER, CHARLES C. KRULAK, JOHN R. COCHRAN, III, MICHAEL G. RHODES, LANCE L. WEAVER AND JOHN W. SCHEFLEN,<br><br>DEFENDANTS. | Case No. 1:05-cv-05168-KMK |

## PLAINTIFFS' MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER
## THE NEW YORK ACTIONS TO THE DISTRICT OF DELAWARE

1

Plaintiffs Virginia McMath and Scott Kimball (hereafter the "New York Plaintiffs") jointly submit this memorandum in opposition to that part of defendants' motion seeking to transfer the above-entitled actions, Kimball v. MBNA Corp., No. 1:05-CV-04725 (KMK) (S.D.N.Y. Filed May 16, 2005) and McMath v. MBNA Corp., No. 1:05-CV-05168 (KMK) (S.D.N.Y. Filed May 31, 2005) (collectively the "New York actions"), to the United States District Court for the District of Delaware.[1]

## PRELIMINARY STATEMENT

Defendants have not met their burden to make a "clear-cut" showing that plaintiffs' choice of forum should be disturbed. Plaintiffs' choice of this venue is buttressed by a number of relevant factors including the following: Ms. McMath resides in this District[2]; the connection of the operative facts to New York is at least as strong as the connections to Delaware and elsewhere; the majority of non-party witnesses are located in or near the Southern District of New York; and, this District has a substantial interest in rendering a judgment relating to defendants' because of MBNA's significant business presence here. Because the defendants

---

[1]     On July 11, 2005, defendants MBNA Corporation ("MBNA") and Bruce L. Hammonds, Kenneth A. Vecchione, Richard K. Struthers, Charles C. Krulak, John R. Cochran, III, Michael G. Rhodes, Lance L. Weaver, and John W. Scheflen (collectively the "Individual Defendants") served a motion to consolidate the above New York Actions, as well as to transfer same pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the District of Delaware. By letter dated July 13, 2005, defendants voluntarily withdrew their motion for failure to request a pre-conference motion in accordance with this Court's Individual Practices. A Court conference was held on July 27, 2005, and defendants' previous motion was resubmitted and a briefing schedule set. Plaintiffs oppose only that portion of defendants' motion seeking a transfer of the New York Actions to Delaware.

[2]     Plaintiff Virginia McMath is a resident of the State of New York and resides within this District. Plaintiff Scott Kimball is a resident of the neighboring State of New Hampshire.

1

have failed to make a clear-cut showing that these factors militate in favor of transferring the New York actions to Delaware, defendants' motion should be denied in full.

## BACKGROUND

This is a securities class action brought on behalf of all purchasers of  MBNA securities between January 20, 2005 and April 21, 2005, inclusive (the "Class Period"), against MBNA and certain of its officers and directors for violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder.  During the Class Period, defendants made false and misleading statements promising "consistent, profitable growth" for MBNA during 2005 in stark contrast to statements by MBNA's competitors, but were forced to correct their statements later, in view of their  decreasing credit card revenues and increasing advertising expenses.  Defendants' false and misleading statements were disseminated to analysts, securities commentators, and investors here in New York, as well as nationwide.

Defendants issued a press release on January 20, 2005 (the "January 20 press release") wherein they reported, among other things, Q42004 earnings of $0.59 per share, that MBNA was raising its dividend by over 17%, and that its Board had approved a buyback of up to $2 billion in stock (or 6% of MBNA's outstanding shares), indicating defendants believed MBNA's stock was underpriced.  In an earnings conference call held  on January 21, 2005 (the "January 21 conference call"), defendants issued the first earnings forecast in MBNA's history, projecting an ongoing 12% earnings increase - with a 10% increase in 2005 earnings over its 2004 earnings. The majority of participants in the January 21 conference call were not in located in Delaware, and the call  included many of the New York-based analysts who follow MBNA for investment banks located in New York City.  At least one New York analyst, favorably impressed by what

he had heard during the January 20 conference call, and in reliance thereon, issued an upgrade for MBNA stock just four days after the conduct of that call. Cplt. ¶ 42.[3]

On February 9, 2005, defendants appeared at the CSFB investor conference held in Orlando, Florida (the "Orlando conference") to discuss MBNA's Q42004 results and future prospects. Defendants reiterated that MBNA would achieve 12% average EPS growth - with 10% being experienced in 2005 - and a 20% increase in Return on Equity. Many of the same New York-based analysts from the January conference call also attended the Orlando conference. Shortly thereafter, on April 21, 2005, defendants stunned the market by disclosing that MBNA had only earned $0.02 per share in Q12005 - a 93% decline from the $0.59 per share that MBNA had reported in Q42004, and that it was guiding 2005 EPS growth down significantly below its prior 10% growth estimates. Responding swiftly to defendants' complete about-face with regard to MBNA's performance and growth estimates, MBNA's stock price plummeted from its closing price of $23.11 per share at the close on April 20, 2005 to below $19 per share on extremely high trading volume of 51 million shares, or 793% of its 52-week average daily trading volume. MBNA's market capitalization lost over $5.8 billion in one trading session and its credibility within the investment community was virtually obliterated.[4]

The first of the New York actions was filed just weeks later on May 16, 2005, before two

---

[3]    Complaint references herein are to the Kimball complaint, to which the McMath complaint is substantively identical.

[4]    As a result of defendants' false statements, MBNA's stock traded at inflated levels during the Class Period, which enabled MBNA's senior officers and directors to sell more than $75 million worth of their own shares. Defendants also used MBNA's purported stellar performance to justify the payment of millions of dollars in bonuses to themselves in 2005.

of the pending Delaware actions[5], and within 11 days of the filing of the first Delaware action. The Delaware actions are currently pending before two different Delaware judges, are in the preliminary stages of litigation, and have not yet been consolidated.[6]

Although MBNA, a Maryland corporation, is headquartered in Delaware, it maintains a regional office (one of only six nationwide) in this District, and its stock is traded on the NYSE. At least 16.5% of MBNA's stock is held by institutions located in New York. Of the 27 analysts who cover MBNA, 17, or more than half, are New York-based analysts from various actively involved investment firms. MBNA also has regular contacts with the investment firms in this District regarding its business operations and overall financial condition, and most of its significant business relationships are maintained in New York City. For example, MBNA maintains a Pooling and Servicing Agreement for its receivables with the Bank of New York as Trustee, and maintains a Credit Card Master Note Trust for the securitization of its receivables with five New York-based investment firms underwriting this essential financing structure. One of MBNA's primary

---

[5]     The seven pending Delaware actions are: *Baker v. MBNA Corp.*, No. 1:05-CV-00272-GMS (D.Del. Filed May 5, 2005); *Phillips v. MBNA Corp.*, No. 1:05-CV-00277-GMS (D.Del. Filed May 9, 2005); *Wilkins v. MBNA Corp.*, No. 1:05-CV-00287-GMS (D.Del. Filed May 12, 2005) (*Bronstein v. MBNA Corp.,* No. 1:05-CV-00289-GMS (D.Del. Filed May 13, 2005); *Penn v.MBNA,* No. 1:05-CV-00289-GMS (D.Del. Filed May 13, 2005); *Jones v. MBNA Corp.*, No. 1:05-CV-00316-GMS (D.Del. Filed May 20, 2005); and *Blum v. MBNA Corp.*, No. 1-:05-CV-00372-KAJ (D.Del. Filed June 8, 2005); *but see Cussen v. MBNA Corp.*, No. 1:05-CV-00389-UNA (D.Del. which was filed on June 13, 2005 and voluntarily dismissed on July 5, 2005) (collectively the "Delaware Actions")

[6]     Neither the pending ERISA case nor derivative actions in Delaware will be consolidated with the class action actions also pending in Delaware, as they pose potential conflicts of interest, allege violations of completely different bodies of law, require different and lesser standards of proof, involve different parties, and will most likely not share discovery or proceed at the same pace as the New York actions.

financial advisors, Alliance Capital, is based in New York, and maintains a 5.3% ownership interest in MBNA.[7]  MBNA has transacted much, if not all, of its investment banking business in this District, amounting to billions of dollars.  Cplt.¶ 33. In addition, the primary counsel serving as MBNA's corporate and litigation counsel are based in New York, as is its outside auditor.  Accordingly, this forum has a strong interest in rendering a judgment relating to the defendants.

Further, the analysts who participated in the January 21 conference call and attended the Orlando conference on February 9, 2005, during which defendants made the false and misleading statements giving rise to plaintiffs' claims, are key witnesses in this litigation because, in part, they are not parties to these actions and therefore would bring a significant measure of objectivity to the discovery process.   MBNA's primary outside counsel, it's outside auditor, as well as its primary financial advisor (Capital Alliance), are all potential witnesses in these actions.  These witnesses as well as the majority of MBNA analysts 17 of whom who are located in or near New York City , are subject to the subpoena power of this Court.  This District is also a more convenient forum,  not just for plaintiffs but, more importantly,  for these key non-party witnesses.

As demonstrated below, defendants have not made a clear and convincing showing that

---

[7]        Should the Court deem it necessary for plaintiffs to expand their current allegations as to defendants' connections to this forum  prior to any consolidation of the New York actions and the filing of a consolidated complaint, plaintiffs seek leave to amend their complaints  pursuant to Rule 15(a) of the Fed.R.Civ.P. Leave to amend shall be freely given when justice so requires.  *See In re IPO Securities Litig.,* 341 F.Supp.2d 328, 343 (S.D.N.Y. 2004).  Any such amendment would not prejudice defendants who have full knowledge as to the participants in and nature of the alleged activities, defendants' connections to this District, and MBNA's strong presence in this District.

the balance of conveniences and the interests of justice warrant the transfer of the New York

actions to the District Court of Delaware.

## ARGUMENT

**I.    Defendants Have Not Met Their Burden to Establish a Strong Case for Transfer**

Motions for transfer lie within the broad discretion of the courts and are determined upon

notions of convenience and fairness on a case-by-case basis." *Nematron Corp. Sec. Litig.*, 30 F.

Supp. 2d 397, 399-400 (S.D.N.Y. 1998) (*quoting In re Cuyahoga Equip. Corp.*, 980 F.2d 110,

117 (2d Cir. 1992) (citations omitted).  The movant must make a clear and convincing showing

that the transfer serves the interests of convenience and justice.  *See Goggins v. Alliance Capital*

*Management, L.P.*, 279 F. Supp. 2d 228, 232 (S.D.N.Y.  2003); *Samrat Ashoka Exports, Ltd. v.*

*Mannix World Imports, Inc.*, 2005 WL 77099 at *2 (S.D.N.Y. Jan. 12, 2005) (movant must make

a "clear-cut showing that transfer is in the best interests of the litigation").

**1.    Plaintiffs' Choice of Forum Is Entitled to Considerable Weight and**
**Should Not Be Disturbed**

"A plaintiff's choice of forum is generally entitled to considerable weight and should not

be disturbed unless the balance of the factors is strongly in favor of the defendant."  *See*

*Nematron Corp. Sec. Litig.*, 30 F. Supp. 2d at 405 [citations omitted].  "Further, the plaintiff's

choice is generally accorded more deference where there is a material connection or significant

contact between the forum state and the underlying events allegedly underlying the claim

[citations omitted] or where the plaintiff is a resident of the forum district."  *Id.* [citations

omitted].  *See also Micromuse, Inc. v. Aprisma Management Technologies, Inc.*, 2005 WL

1241924, at *2 (S.D.N.Y. May 24, 2005) (of the factors considered, plaintiff's choice of forum is

usually given the "greatest weight,"  but is shown less deference where plaintiff is a nonresident

6

and the operative facts bear little connection to the chosen forum); *Ravenswood Investment Co.,*

*L.P.* v. *Bishop Capital Corp.*, 2005 WL 236440, at * 7, slip. op. (S.D.N.Y. February 1, 2005)

(Karas, J.) (plaintiff's chosen forum is usually granted "considerable weight").  In *Lemberger v.*

*Westinghouse Elec. Corp.,* 76-C-552(JW) 1976 WL 834,  *5 (E.D.N.Y. 1976), Judge Weinstein

articulated an additional reason for upholding a plaintiff's chosen forum in an action brought

under the federal securities laws:

> The plaintiff's choice of forum is a particularly strong
> [consideration] in an action brought under the [1934 Act] since the
> venue provision of the Act is designed to serve the underlying
> federal policy of allowing the plaintiff the widest possible choice
> of forums.

*See also S.E.C. v. Electronics Warehouse, Inc.*, 689 F.Supp. 53, 74 (D. Conn. 1988) (citing *S-G*

*Sec., Inc. v. Fuqua Investment Co.,*, 466 F.Supp. 1114, 1122 (D.Mass. 1978).[8]

Although defendants contend that plaintiffs' chosen forum is entitled to little or no

deference because it is a "national class action" ( Defs. Br. at 14), Judge Scheindlin recently

cautioned that even in the class action context with a widely dispersed class, "'[a]ffording less

deference to representative plaintiffs does not mean they are deprived of all deference in their

choice of forum.'" *Geopharma,* 2005 WL 1123883 at *1 (quoting *Dirienzo v. Philip Servs.*

*Corp.*, 294 F.3d 21, 28 (2d Cir. 2002)).   Plaintiffs' chosen forum should be honored where, as

here, defendants failed to make a "convincing showing" that the balance of factors warrants a

transfer of the New York actions to Delaware.

-------

[8]    *But see Ravenswood*, 2005 WL 236551, at *8 and n.8 (this Court noted that 15 U.S.C. § 78aa "affords broad venue options to securities fraud plaintiffs, by providing, for example,  that an action can be brought where the allegedly fraudulent statements are delivered", but declined to give plaintiffs' chosen forum added deference on this basis).

a.    **Plaintiffs' choice is given more weight where plaintiff resides in the forum**

Plaintiff's choice, "is generally accorded more deference where the plaintiff is a resident of the forum district.  *See, e.g.,* AMVEST *Capital Corp. v. Banco Central, S.A.,* 628 F.Supp. 1258 (S.D.N.Y. 1986)." *O'Brien v. Goldstar Technology, Inc.*, 812 F.Supp. 383, 386 (W.D.N.Y. 1993); *Geopharma*, 2005 WL 1123883 at *1 .  Here, plaintiff McMath resides in White Plains, New York, which lies within this District,  and plaintiff Kimball resides in the neighboring State of New Hampshire.   At least one court has held that "even where a plaintiff only resides near the forum, it may be appropriate to require a convincing showing before a motion to transfer will be granted." *Prentice-Hall Corporation Systems, Inc. v. Insurance Company of North America*, 81 F.R.D. 477, 480 (S.D.N.Y.  1979) (*citing Mayer v. Development Corporation of America,* 396 F.Supp. 917, 932 n. 26 (D.Del. 1975)).   Clearly, this factor militates against transfer.[9]

b.    **Plaintiffs' allegations have material connections to New York**

In addition to being the home forum for plaintiff McMath, this forum is  significantly connected to the operative facts outlined herein, including the following:

---

[9]        Plaintiffs respectfully request that the Court consider the greater financial interest that the New York plaintiffs have in this litigation as an additional factor weighing in favor of retaining these actions before this Court.  "There is no rigid formula for balancing these factors and no single one of them is determinative," *Samrat Ashoka Exports v. Mannix*, 2005 WL 77099, at 2 (citations omitted).  The "list [of factors used to evaluate a transfer motion] is not exhaustive." *Royal & SunAlliance v. British Airways,* 167 F. Supp. 2d 573, 576 (S.D.N.Y. 2001).   McMath and Kimball purchased 400 shares and  2000 shares of MBNA stock, respectively, during the pertinent time period.   Copies of the New York plaintiffs' PSLRA certifications are annexed to their complaints. Based upon the certifications annexed to their respective complaints, the plaintiffs in the Delaware actions collectively purchased a total of 1765,  shares, or substantially fewer shares than the New York plaintiffs (2400 shares). Accordingly, plaintiffs in the New York actions likely have a far greater financial interest in the outcome of this litigation, in the aggregate, than the Delaware plaintiffs.

- The false and misleading press release at issue  was disseminated to investors in New York .  Significantly, 16.5% of MBNA's stock, which is traded on the NYSE,  is held by institutions located in New York City;

- Of the 27 analysts who cover MBNA, 17, or more than half,  are located in this District. Many of those analysts  participated in the January 21 conference call at issue.  Matthew Park, an analyst with A.G. Edwards' New York office, raised his recommendation for MBNA from a "hold" to "buy" just 4 days after the aforesaid conference call, in express reliance upon the misstatements made by defendants during that call.  Cplt. ¶ 42;

- The majority of non-party witnesses, including the 17 analysts, MBNA's primary corporate counsel, its primary financial advisor (Alliance Capital), and its outside auditor are located in this District, as are many documents they possess concerning defendants' statements made during the Class Period.  These non-party witnesses would be inconvenienced if the New York actions are transferred.  Moreover, these witnesses are subject to this Court's subpoena power, and not subject to compulsory process in Delaware;

- Certain data contained in the press release at issue may have been compiled or reviewed by MBNA's counsel or outside auditor, who are both located in New York, and the press release itself may also have been prepared, drafted, reviewed, or revised by MBNA's corporate counsel or certain  of the New York-based analysts or investment firms with whom MBNA does business, prior to its release;

- MBNA maintains one of its 6 regional offices in this District, and because of the substantial business transacted by MBNA in this District, it is possible that employees from that office can provide relevant discoverable information as well.

The facts of *Geopharma* are nearly identical to the facts at bar.  In *Geopharma*, plaintiffs argued that the operative facts focused on the dissemination of the misleading statements through the  NASDAQ National Market System located  in New York City, and that the events giving rise to their claims were spread throughout the East Coast, Mid-Atlantic and the South. Defendants therein, as do defendants herein, merely asserted that the SEC reports and press releases at issue were drafted and issued from the Middle District of Florida, and that all the decisions regarding the disclosures or nondisclosures were made in Florida, and therefore Florida was the center of gravity for the allegations. Judge Scheindlin held:

Because the "operative facts–which involve the creation and

9

> dissemination of false or misleading statements–are spread across
> many districts including the Middle District of Florida and the
> Southern District of New York, **this factor is neutral.**

*Geopharma,* at *2.  Here, the "operative facts" are similarly connected to a number of locales,

including New York, Delaware, Florida, and Maryland.  The Orlando conference was held in

Florida.  The January 21 conference call may have included participants in Delaware, but the

majority of participants were likely situated here in New York.  The January 20 press release

was, as in *Geopharma*, disseminated to investors in this District and elsewhere, and it is not yet

known to what extent others located outside Delaware may have been involved in its preparation

and dissemination.  Accordingly, defendants' contention that the mere fact that  MBNA (a

Maryland corporation) is headquartered in Wilmington, Delaware, means that  the locus of

operative facts is necessarily located in Delaware is without merit.  At best, as Judge Scheindlin

held in *Geopharma*, this factor is neutral because this District, Delaware, as well as Florida, and

Maryland,  all have connections to these events and actions.  *Id*.

Defendants' reliance on *Chet Baker Enters. v. Fantasy, Inc.*, 257 F.Supp.2d 592

(S.D.N.Y. 2002) is unavailing.  In *Chet Baker,* a breach of contract action, the Oklahoma

plaintiffs' residence was geographically closer to the transferee forum (California), and the

action involved a contractual  forum selection clause designating California as the proper forum

to adjudicate any claims between the parties.  New York was neither plaintiffs' residence nor the

locus of the operative facts in that action.  *Id*. at 597.  By contrast, Plaintiff McMath is a White

Plains, New York resident.   Accordingly, because McMath resides in this forum, and because

many of the operative facts[10] either occurred in this District or disproportionately involved individual and corporate participants located in this District, plaintiffs' choice of forum should be entitled to greater weight.  *See Chet Baker,* 257 F. Supp. 2d at 597.

     *Goggins* and *Berman v. Informix Corp.*, 30 F. Supp. 2d 653 (S.D.N.Y. 1998), similarly provide little support for a transfer to the District of Delaware.  In *Goggins,* although the court found that in class actions less weight is given to the plaintiff's choice of forum, this factor was nonetheless held to "moderately" favor plaintiffs who were not even New York residents, but rather resided in Florida.  *Id*. at 232.   The *pro se* plaintiff in *Berman* brought his individual action in this District more than 14 months after the first of more than 20 related class actions had been filed in California, nearly one year after those cases were consolidated, and 9 ½ months after lead counsel was appointed.  *Id.* at 655.   Here, the first New York action was brought only 11 days after the first-filed  Delaware action and, moreover, those Delaware cases are in the earliest stages of the litigation and have not yet been consolidated.  Finally, here, unlike in *Berman*, Delaware is a short trip from New York (in contrast to California), and is easily accessible by rail or car.  Expensive and time consuming air travel by defendants is not a necessity in this matter.

     **2.     Defendants failed to specifically identify key witnesses and why they would be inconvenienced if the actions remained in this district**

---

    [10]     The January 21 conference call and Orlando conference at issue herein included New York City-based analysts, such as  Matthew Parks (Cplt. ¶ 42),   who follow and report on MBNA, as well as other non-parties who are potential witnesses likely to possess highly relevant information concerning both the conference call and Orlando conference. Discovery will likely reveal many contacts with potential witnesses located here, including the identities and location of those who participated in these events, and others who may have participated in the preparation of the press release and/or compiled, prepared, reviewed or revised its contents (or the facts underlying defendants' statements) prior to its release.

Defendants did not submit the required supporting affidavit listing the witnesses inconvenienced by the current forum and a general statement of what their testimony would cover. Instead, defendants merely assert, in a conclusory manner in their brief, that the individual defendants and "any other witnesses" are likely to be located in Delaware. Defs. Brief at 12-13. A number of courts have held that a §1404(a) motion should be denied for failure to meet the rigorous standards of proof concerning the convenience of witnesses and parties. *See Kiss My Face Corp. v. Bunting*, 2003 WL 22244587, at *2 (S.D.N.Y. September 30, 2003) (citing *Pilates, Inc. v. Pilates Inst, Inc.* , 891 F. Supp. 175, 183 (S.D.N.Y. 1995) (a party's §1404 (a) motion should be denied absent a detailed list documenting potential witnesses on which the party intends to rely in the transferee district, along with a general statement of the topics of each witness' testimony). *See also Berman,* 30 F. Supp. 2d at 656 (movant must also support the "transfer application with an affidavit containing detailed factual statements relevant to the factors [to be considered by the court in its transfer decision], including the potential principal witnesses expected to be called and a general statement of the substance of their testimony."); *Mitsui Marine & Fire v. Nankai Travel Intern.,* 245 F. Supp. 2d 523, 526 (S.D.N.Y. 2003) (same).

 In *Geopharma,* defendants also made the argument that the key witnesses, who purportedly participated in drafting and disseminating the alleged misstatements, were officers and employees of the corporate defendant headquartered in Florida, and would be inconvenienced if the action was not transferred from New York to Florida. Judge Scheindlin flatly rejected that assertion, stating:

> [D]efendants' position, if taken to its logical conclusion, would
> create a presumption that securities class actions should be brought

12

> in the home district of the defendant.  This position is at odds with
> the actual text of section 27, which provides that such suits may be
> brought *either* "in the district wherein any act or transaction
> constituting the violation occurred" *or* "in the district wherein the
> defendant is found or is an inhabitant or transacts business."
> [FN15] Thus, while convenience of witnesses is an important
> factor that must be weighed in determining proper venue,
> **convenience of defendants' *party* witnesses cannot operate to
> eliminate section 27's explicit provision for jurisdiction
> wherever any violation occurred.**

*Geopharma*, 2005 WL 1123883, at *2 [emphasis added].

Curiously, defendants, who maintain a regional office here; have most of their significant

business relationships here; have legal, accounting and financial advisors here; and transact

much, if not all of their investment banking business here, amounting to billions of dollars --

"have not found New York inaccessible for other purposes." *Lemberger v. Westinghouse Elec.

Corp.*, 1976 WL 834, at *5 (finding that defendants' claims of inconvenience were undercut by

the fact that they maintained a major corporate office in New York City).  *See also Hernandez v.

Blackbird Holdings, Inc.*, No. 1 Civ. 4561 (GBD), 2002 WL 265130, (S.D.N.Y. Feb 25, 2002)

*2 (having a New York branch office and actively engaging in business in New York, the court

noted that defendant had little argument that it is burdensome to litigate here).

With respect to the individual defendants in this action who may reside in or near

Delaware, the burden to travel from Wilmington, Delaware to New York City is minimal.  *See

Eskofot v. E.I. DuPont De Nemours & Co.*, 872 F. Supp. 81, 96 (S.D.N.Y. 1995).  It is likely that

many of the individual defendants and MBNA's other senior management frequently travel to

New York City for business purposes.[11]

---

[11]    With respect to additional potential witnesses, plaintiffs note that Randolph D.
Lerner, MBNA's Chairman of the Board, is a member of the New York bar, and appears to
maintain residences both in New York City and East Hampton, New York.  Louis J. Freeh, the

Defendants also ignore the fact that the vast majority of the non-party witness are located in this District, and that discovery as to those witnesses will take place in New York. Non-party witnesses in this litigation will include the 17 analysts located in or around New York City[12] who followed and reported on MBNA during the relevant time period. Those analysts, like Matthew Park, are believed to have issued reports or recommendations regarding MBNA in express reliance upon the false statements made by defendants as alleged herein. These analysts and other it's potential New York-based witnesses, including MBNA's outside counsel, its outside auditors, and primary financial advisors, may also have participated in compiling, preparing, drafting, revising and/or reviewing the data underlying MBNA's press releases, and will probably provide relevant documents and/or testimony as to the facts giving rise to plaintiffs' claims. New York, therefore, is not only a more convenient forum for plaintiffs, but

---

current Vice Chairman and General Counsel of MBNA is a former federal judge and prosecutor in New York, and is believed to maintain a residence in New York City. One-half, or 7 of MBNA's 14 directors, are **not** based in Delaware. Specifically, Mary M. Boies is a practicing attorney in New York; James H. Berick is a retired attorney from Ohio; Benjamin R. Civiletti is an attorney in Washington, D.C.; William L. Jews is the President and CEO of a health services concern believed to be based in Maryland; Stuart L. Markowitz is a medical doctor and professor in Ohio and Florida; Thomas G. Murdough, Jr. is a manufacturer based in Ohio; and, Laura S. Unger is a securities attorney and regulatory consultant based in Washington, D.C.

[12]      In addition to the 17 New York-based analysts listed as potential witnesses in footnote 17, *infra*, plaintiffs are aware of 10 other analysts who follow MBNA who are located nationwide and overseas. Because of "New York City's position as a transportation hub," travel to New York for those witnesses, who reside outside this and the proposed transferee forum, is somewhat more convenient than travel to Delaware. *See Micromuse,* 2005 WL 1241924, at *4. *See also Caville v. Malibu Toys, Inc.*, 2004 WL 1516799, at *3 (S.D.N.Y. July 7, 2004) (although courts have accorded less significance to the inconvenience of critical witnesses who reside outside the current or transferee Districts, this factor was held to lend mild support to plaintiff's choice of forum).

the vast majority of potential non-party witnesses are located here[13] as well.[14]

Defendants' cases regarding the "inconvenience" of the New York forum are distinguishable. In *Chet Baker*, the Court found, unlike here, that transferring the action from New York to California "would inconvenience neither the [Oklahoma] plaintiffs, the lone defendant who has appeared in the action, nor the defaulting defendants, all of whom have consented to personal jurisdiction in the California state and federal courts." *Id*. at 597. Here, a transfer would inconvenience both the plaintiffs and more importantly, the majority of non-party witnesses. Maintaining the actions here would, however, be only a minor inconvenience to those defendants who reside in Delaware and who most likely often travel to New York City for business purposes.

In *Berman,* plaintiff filed his individual action, *pro se*, more than 14 months after the first of more than 20 related class actions had been filed in California, nearly one year after those cases were consolidated, and 9 ½ months after lead counsel was appointed. *Id.* at 655. Given these overriding facts, the plaintiff therein had little reasonable expectation that his action would remain in the New York forum.

---

[13]     The convenience of any such non-party witnesses who reside and/or work in or close to this District is more significant than that of the party witnesses. *See Roy & Sunalliance v. British Airways*, 167 F. Supp. 2d 570, 577 (S.D.N.Y. 2001). The convenience of the parties does not favor transfer when it would merely shift any inconvenience from defendants to plaintiffs. Plaintiffs here have identified party and non-party witnesses, most of whom live or work in or near New York City. Thus, requiring defendants to travel to New York would be no more inconvenient than travel to Delaware would be for plaintiffs and their witnesses. Accordingly, this factor also weighs against transfer.

[14]     Neither plaintiffs' nor defendants' counsel (*see* www.sullcrom.com) have offices in Delaware. Travel costs for both would be greater if this action is transferred to Delaware. As noted in *Geopharma*, this factor favors maintaining the action here in New York. *Id*., 2005 WL 1123883, at * 2.

Finally, *Baltimore v. Toyota Motor Credit Corp.,* 2001 WL 637377 (S.D.N.Y. 2001), was brought in the New York district court under the Equal Credit Opportunity Act after the plaintiff therein had read about a similar action pending in the Middle District of Tennessee. The court noted that aside from the plaintiff, from virtually all other pertinent witnesses and all relevant documents were located in California.  By contrast, in the case at bar, dozens of prospective New York-based witnesses who, for example, participated in the January 21 conference call and Orlando conference may be called to give testimony at deposition and trial. The court also noted in *Baltimore* that it would be unnecessary, inconvenient, and expensive for plaintiffs to fund the copying and shipping of documents to New York.  Both plaintiffs and defendants, however, are well-situated to transport the necessary documents to either forum at a reasonable cost in the instant matter.  *See Micromuse,* 2005 WL 1241924, at *4.  Additionally, the option of videotaping the testimony of Delaware-based witnesses who are unwilling to travel to New York (though none have been identified by defendants) is available under the Fed.R.Evid. 804(a)(5) to further alleviate any potential "inconvenience" concerns.  *See Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 561-62 (S.D.N.Y. 2000).

> **4.     The Location of Relevant Documents Does Not Weigh Heavily in Defendants' Favor**

Plaintiffs' documents and those of potential New York-based third party witnesses (including defendants' outside its  counsel, outside auditors, its primary  financial advisor and many of the analysts who covered MBNA) are located in or near this District.  Even assuming that most of defendants' relevant documents are currently in Delaware, this factor is deemed to

be a neutral[15] consideration "in today's era of photocopiers, fax machines and Federal Express. *Coker v. Bank of America*, 984 F. Supp. 757, 766 (S.D.N.Y. 1997); *see also Aerotel,* 100 F. Supp. 2d 189, 197, n. 9." *Hernandez*, 2002 WL 265130 at *2. Plaintiffs also note that given the short three-month Class Period (*i.e.*, January 20, 2005-April 21, 2005) in this action, any production may involve a limited amount of documents. *See Geopharma*, 2005 WL 1123883, at *3. Due to the relative ease of gaining access to documents which are preserved in a variety of easily transportable electronic media formats, including CD-Rom or even DVD, this factor does not favor transfer.

### 5.    Delaware is Not the Locus of Operative Facts

Plaintiffs' claims arise primarily from the allegedly false and misleading statements disseminated by defendants in the January 20 press release, during the January 21 conference call, and at the Orlando conference held on February 9, 2005. Defendants disseminated their misstatements promising "consistent, profitable growth" for MBNA to analysts located in New York, and at least one such analyst[16] then issued a favorable "buy" recommendation for MBNA, thereby contributing to the inflation of the market price at which plaintiffs and the other

---

[15]    In fact, a number of courts have held that defendants' "blanket assertion" that all documents related to the litigation are in defendants' home forum was not enough to favor transfer under section 1404 (a). *See Kiss My Face Corp.*, 2003 WL 22244587, at *2 (citing *Intria*, 2000 U.S. Dist. LEXIS 17039, at *15). Defendants' failure to provide the Court with the nature and volume of documents and evidence to support their case or the difficulty in transporting such documents does not support transfer. *See Id.*

[16]    For example, on January 25, 2005, analyst Matthew Park of A.G. Edwards' New York City office, encouraged about MBNA's future profitability, increased his investment rating on MBNA's stock to "buy" from "hold," in reliance upon defendants' misstatements made during MBNA's January 21, 2005 earnings conference call. Cplt. ¶42.

members of the class purchased MBNA securities during the Class Period.[17]  *See e.g.,*

*WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 300 (S.D.N.Y. 2003) (class certification decision)

(public information concerning an issuer's stock, including analyst reports, is reflected in stock

price); *IPO Sec. Litig.*, 241 F.Supp.2d 281, 375 (S.D.N.Y. 2003) (on a motion to dismiss, court

held plaintiffs should have the opportunity to show that in an efficient market, all public

information is reflected in share price).   Accordingly, false information was not only

disseminated to markets located in New York City by defendants, but their misrepresentations

were then repeated and re-disseminated by at least one analyst in this District, which were then

broadcast to the investing public at large.   Because this is a complex securities class action, and

the facts giving rise to this case are not centered in Delaware, but are connected, to a large

degree, with New York, as well as  Delaware, Florida, and Maryland, this factor is neutral and

does not support transfer.  *See* Point 1b, *supra.*

　　　Defendants cite to *APA Excelsior III L.P. v. Premiere Technologies, Inc.*, 49 F.Supp.2d

664 (S.D.N.Y. 1999), which is inapposite.  In *APA Excelsior*, the court stated that the

---

[17]    Plaintiffs have alleged that MBNA conducted significant investment banking business (amounting to at least  $750 million) with major investment banks located in New York City during the Class Period, including Credit Suisse First Boston, JP Morgan, CitiGroup, Merrill Lynch, and Morgan Stanley. (Cplt. ¶8).  The overwhelming majority of equity analysts who cover and issue reports on MBNA, including analysts from almost all of the aforementioned banks, are located in New York City, including: (1) Matthew Park (A.G. Edwards); David Ritter (Argus Research); David Hochstim (Bear Stearns); Howard Mason (Bernstein Research); Moshe Orenbuch (CSFB); Neil Abromavage (Deutsche Bank); Fox-Pitt, Kelton (Edward Groshans); Craig Maurer (Fulcrum Global Partners); Michael Hodes (Goldman Sachs); George Sacco (JP Morgan); Stephen Schultz (Keefe, Bruyette & Woods); Bruce Harting (Lehman Brothers); Ken Posner (Morgan Stanley); Brad Ball (Prudential Securities); Matthew Vetto (Smith Barney); Michael Cohen (Susquehanna Financial Group); and Eric Wasserstrom (UBS Warburg). Discovery will yield the identities of those analysts and/or other individuals who participated in the MBNA conference calls, and whether such individuals or others affiliated with the aforementioned banks reviewed or in any way helped draft the MBNA's press releases regarding these conferences or other MBNA-related activities.

"overriding consideration in this case is the existence of twenty-two previously filed and now consolidated actions in the Northern District of Georgia." *Id. at 668.*[18]  Those 22 actions were filed in Georgia 5 months before the plaintiff's New York action was filed, and the first and second consolidated amended complaints in the Georgia actions both referenced the New York plaintiff's action and annexed it as an exhibit.  Additionally, the plaintiff's claims in *APA Excelsior* were expressly included in a proposed subclass in the consolidated action.  With respect to the locus of operative facts, the court considered that many of the defendants and witnesses who did not reside in Atlanta "often travel to Atlanta." *Id. at* 672.  In the case at bar, the opposite is most likely true.  For example, most of the participants in the relevant MBNA conferences, including the aforementioned equities analysts, who may be called as witnesses in this litigation, reside in New York and, apparently, none of these individuals reside in or routinely travel to Delaware.  MBNA's key executives, including defendants herein, however, maintain significant business relationships in and most likely often travel to New York.  Moreover,  The Orlando conference was not held in Delaware, but rather in Florida.  Additionally, the Delaware actions here have not yet been consolidated, as was the case in *APA Excelsior.*  Consequently, defendants' reliance on *APA Excelsior* misses the mark.

### 6.    Ability to Compel Attendance

Defendants correctly concede that defendants and other MBNA employees will be made available in any venue by virtue of their employment relationship with MBNA. Defs. Br. at 13

---

[18]    Similarly, the plaintiff in *Berman* brought his individual action, *pro se*, well over a year after the first of more than 20 class action complaints had been filed, and after those actions had been consolidated and lead counsel appointed.  *Id.* at 655.  Here, the Delaware Actions are in the earliest stages of litigation, and the transferee court would have no more expertise with respect to the facts and circumstances of the actions than this Court.

(*citing Mitsui Marine*, 245 F. Supp. 2d at 527).  Important non- party witnesses, however, including analysts, financial advisors, legal counsel and others located  in New York,  who may have participated in the MBNA conference call, the Orlando conference, and the preparation of the critical  press release are likely located in this District and, therefore, probably are not subject to compulsory process in Delaware. *See Fed. R. Civ. P. 45 (b) (2) & (c) (3).*

### 7.    Trial Efficiency and Interest of Justice

Defendants rely primarily on *Goggins, Capital Ventures,* and *APA Excelsior* as cases where courts in this District have transferred actions to other forums where related actions were pending.  In each of those cases, however, the related actions had already been consolidated, and orders had already been issued by other courts transferring  related cases to the same forum. *See, e.g., Goggins,* 279 F.Supp.2d 231, 234.  Here, the Delaware actions have not been consolidated, and no order has been entered by the Delaware courts seeking  to transfer any related cases to Delaware.  Finally, the Delaware court to which these actions would be transferred would have no more knowledge or expertise as to the facts and circumstances of the actions than this Court because the first actions in both Districts were commenced within only 11 days of one another and thus are in the same early stage.   Balancing all of the above factors[19], defendants have not established a clear-cut case for transfer and, therefore, defendants' motion to transfer the New York Actions to Delaware should be denied.

---

[19]    Another factor --  that the District of Delaware is equally competent to adjudicate claims arising under the federal securities laws (Defs. Br. at13-14)–  favors neither plaintiffs nor defendants, and is therefore a neutral factor with respect to the balancing test employed.

## CONCLUSION

For all of the foregoing reasons, defendants' motion to transfer the New York Actions to the United States District Court for the District of Delaware pursuant to 28 U.S.C. § 1404(a) should be denied in its entirety.

Dated: August 17, 2005

**LAW OFFICES OF CURTIS V. TRINKO, LLP**

By:     _____/s_____

        Curtis V. Trinko (CT-1838)
        Jeffrey B. Silverstein (JS-4818)
        16 West 46th Street, Seventh Floor
        New York, NY  10036
        Telephone:  212/490-9550
        Fax: 212/986-0158
        Email: ctrinko@trinko.com

        **LAW OFFICE OF ALFRED G. YATES JR., PC**
        Alfred G. Yates, Jr.
        Gerald L. Rutledge
        519 Allegheny Building
        429 Forbes Avenue
        Pittsburgh, PA  15219-1649
        Telephone:  412/391-5164
        Fax: 412/471-1033
        Email: yateslaw@aol.com

        **Counsel for Plaintiffs**